COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted:    November 4, 2022
Final Report:      November 23, 2022

David C. Hutt, Esquire
R. Eric Hacker, Esquire
Michelle G. Bounds, Esquire
Morris James LLP
107 West Market Street
P.O. Box 690
Georgetown, DE 19947-0690

Richard E. Berl, Esquire
Hudson, Jones, Jaywork & Fisher, LLC
Dartmouth Business Center
32382 Carpenter's Way, Suite 3
Lewes, DE 19958

RE:   *Jay Kevin Green and Rene G. Johnson v. Lewis Curt Green, Sr., and Lawrence Lee Green*
      C.A. No. 2019-0787-PWG

Dear Counsel:

Pending before me is a dispute involving the partition in kind of approximately 86.4 acres of property in rural Sussex County co-owned by four siblings. The return of the court-appointed commissioners subdivided the property into four parcels of equal size. Two siblings filed objections to the commissioners' return, with the qualification that their objections would be cured depending upon the assignment of the parcels. Applying equitable principles, I assign the parcels in a manner that cures the other objections. I recommend that the Court approve the commissioners' return, and direct that subdivision, demolition and other specified

costs associated with the partition be shared equally among the siblings. This is a final report.

## I. BACKGROUND[1]

Petitioners Jay Kevin Green ("Jay") and Rene G. Johnson ("Rene," together with Jay, "Petitioners") with their siblings Lewis Curt Green, Sr. ("Lewis") and Lawrence Lee Green ("Lawrence," together with Lewis, "Respondents"), own an approximate 86.4 acre parcel of land located east of Greenwood, Delaware ("Property"), as tenants in common, holding a 25% interest each.[2] The Property has been in their family since about 1980,[3] and has improvements, including an older farmhouse, in which Lawrence's daughter currently resides,[4] a non-operating poultry house,[5] a manure shed, and other storage and equipment sheds.[6] The entire Property is farmed under a lease arrangement.[7]

---

[1] I refer to the October 19, 2022 trial transcript, *see* Docket Item ("D.I.") 52, as "Trial Tr.," and Petitioners' trial exhibits as "Pet'rs' Tr. Ex." I use first names in pursuit of clarity and intend no familiarity or disrespect.

[2] D.I. 1. The Property is adjacent to Greenhurst Farm Road and designated as Sussex County Tax Parcel No. 4-30-2.00-2.00. *Id.*, ¶¶ 6, 18. Florence Swartzentruber, the siblings' mother, deeded the Property to them on February 1, 2010. *Id.*, ¶ 17, Ex. A.

[3] Trial Tr. 228:7.

[4] *Id.* 233:9-11.

[5] Lewis testified that the poultry house has not been in operation for at least 10-12 years, *see id.* 251:13-15, and has deteriorated so that it is not usable for storage. *Id.* 252:22-253:12.

[6] *See* D.I. 25.

[7] Trial Tr. 71:2-6; *id.* 228:21-229:2.

Petitioners filed a petition seeking partition by sale of the Property on October 1, 2019.[8]  On November 7, 2019, Respondents filed an answer and counterpetition for partition in kind.[9]  On July 9, 2021, the parties agreed to proceed with a partition in kind.[10]  On December 10, 2021, Respondents identified three commissioners to be appointed under 25 *Del. C.* §724.[11]  On January 7, 2022, the Court appointed Lawrence P. Moynihan, Mike Cotten and Richard L. Bryan ("Commissioners") as commissioners pursuant to 25 Del. C. §724, and directed them to "make a just and fair partition [of the Property] amongst the parties in the proportions set out [in the Order (each sibling held a 25% interest in the Property)]."[12]

In a letter dated March 9, 2022, the Commissioners filed their return ("Return") summarizing their opinion of a just and fair partition of the Property.[13] The Return noted that the Property is zoned AR-1, Agricultural Residential, under the zoning authority of Sussex County, and there is no public water or sewer

---

[8] D.I. 1. Petitioners also sought specific performance of an agreement to convey a  parcel of the Property to Rene, and that Respondents account and contribute for farming income on the Property and their use of the farmhouse. *Id.* ¶¶ 25-29, 34-37.

[9] D.I. 9.

[10] D.I. 19.  The parties also agreed that Petitioners would not pursue their specific performance claim. *Id.*

[11] D.I. 20.  On December 29, 2021, Petitioners indicated that they did not object to the commissioners suggested by Respondents. D.I. 22.

[12] D.I. 24.

service to the Property.[14]  The Return determined that the highest and best use of the Property would be to subdivide it into four lots for residential development.[15] Attached to the Return was a survey dividing the Property into four lots of equal size, Lots 1 through 4, of approximately 21.595 acres each, and close to equal road frontage, as reflected below.



---

[13] D.I. 25.

[14] *Id.*

[15] *Id.*  Commissioner Bryan testified that, as the highest and best use of the Property, the four 21-acre lots would be "very saleable." Trial Tr. 223:22-224:8.

The Return stated that the structures on the Property (except for the manure shed) do not contribute any value and should be demolished.[16]  In addition, the Return noted that the northernmost lot (Lot 4) fronts the headwaters of the Nanticoke River and is partly in a flood zone, but concluded that any limitation caused by the flood zone area is offset by the "more desirable development potential of the remaining uplands having attractive waterfront orientation."[17]

Finally, the Return suggested, as requested by Lawrence, that the most southerly lot (Lot 1) be assigned to Lewis, since he owns adjoining land, and that the adjacent lot (Lot 2) be assigned to Lawrence.[18]  It noted, however, that the Commissioners did not consider ownership of the four parcels in making a just and fair partition and "[f]rom a valuation standpoint, any of the owners could take any of the parcels."[19]  When the Commissioners visited the Property, they met with

---

[16] D.I. 25.  The Return characterized the manure shed as a building of "comparatively nominal value," but concluded that it "contributes to the land value." *Id.*

[17] *Id.*; *see also* Trial Tr. 181:9-182:4.

[18] D.I. 25.

[19] *Id.* As to assignment of the lots, Commissioner Moynihan testified that the Commissioners felt since Lewis had adjacent property, it made sense to suggest that he have that parcel, but they didn't care who received which lot – that you could "[t]hrow it out of a hat." Trial Tr. 182:12-23.  He further testified that the suggested assignments were not "any kind of requirement." *Id.* 194:17-23.

Lawrence.[20]   They did not meet, or have any contact, with Petitioners prior to preparing the Return.[21]

Petitioners filed objections to the Return ("Objections") on April 19, 2022.[22] The Objections disputed the Commissioners' determinations that: (1) residential development was the highest and best use for the Property;[23] (2) the improvements, including the farmhouse, added no value and should be removed;[24] and (3) Lot 4 was equal in value to the other lots.[25]   Petitioners' other concerns included the lots' differing demolition costs, and the Commissioners' contact with Respondents and not Petitioners.[26]   They asked the Court to reject the Return and either appoint new commissioners under 25 *Del. C.* §725, or order partition by sale.[27]

---

[20] *See* Trial Tr. 145:24-146:2; *id.* 171:8-13; *id.* 193:19-194:9; *id.* 241:1-18.

[21] *See id.* 65:16-66:3; *id.* 83:3-16; *id.* 145:18-23; *id.* 164:10-14.   After Petitioners' attorney received a copy of the proposed Return from Respondents' attorney, he sent a letter to the Commissioners explaining Petitioners' concerns with the proposed Return. *See* D.I. 29. After receiving the letter, the Commissioners finalized the Return and, subsequently, sent a March 28, 2022 letter detailing all their internal communications with the parties/counsel, in response to Petitioners' request. *See* D.I. 27, at 2; D.I. 29.

[22] D.I. 31.

[23] They noted that surrounding land is primarily agricultural. *Id.*, at 2.

[24] *Id.*, at 3-5.

[25] They stated that Lot 4's waterfront was ditch-like, its flood zone area impacted development potential, and it had served as the Property's dumping ground, so trash and junk, as well as the remains of an old hog house, needed to be removed. *Id.* at 5-6.

[26] *Id.*, at 6-8.

[27] *Id.*, at 9.

An evidentiary hearing on the Objections was held on October 19, 2022.[28] The Commissioners and all four siblings testified at the hearing.[29] Jay testified that he preferred Lot 2 because of the farmhouse and the buildings.[30] Rene testified that she preferred Lot 1 because it has easy road access, "[y]ou can build right away," and for personal reasons.[31] Rene and Jay expressed no interest in Lot 3 or Lot 4.[32] At the hearing, two of the Commissioners described Lot 4 as the best lot, the choice location.[33] Lawrence testified that Lot 4 was the "most desirable" lot, and both he and Lewis prefer having adjacent lots.[34] Lewis expressed an interest in

---

[28] D.I. 48.

[29] In addition, Jamie Whitehouse, Director of Planning and Zoning for Sussex County, and Robert Braxton Dees, an MAI certified appraiser, presented testimony. *Id.*

[30] Trial Tr. 66:4-16. Petitioners' post-trial statement stated that Jay wants to reside in the farmhouse. D.I. 51, at 4.

[31] Trial Tr. 83:17-84:5; *id.* 85:17-86:10 ("Before my mom died, she wanted me to have land on [Lot 1].").

[32] *See supra* notes 30, 31 and accompanying text.

[33] Trial Tr. 213:15-18 (Commissioner Moynihan's testimony that Lot 4 was "the best of the lots"); *id.* 218:12-21 (Commissioner Bryan's testimony that Lot 4 was "the choice location on that farm").

[34] *Id.* 241:23-242:1; *id.* 242:3-6. Lawrence testified that he would like to have a little farm next to Lewis on a "nice piece of land," and would feel the same if he and Lewis were assigned Lots 3 and 4, instead of Lots 1 and 2. *Id.* 237:9-23; *id.* 242:3-6; *id.* 247:2-22. In addition, Lewis and Lawrence expressed no interest in living in the farmhouse. *See id.* 242:7-13; 256:6-9.

Lot 1 because it adjoins his existing property, but described Lot 4 as "pretty choice," and said he would take Lot 3 or Lot 4 – that it didn't matter to him.[35]

The parties submitted written post-trial statements on November 4, 2022.[36] Petitioners ask the Court to assign the lots consistent with the parties' trial testimony (Lot 1 to Rene, Lot 2 to Jay, Lots 3 and 4 to Lawrence and Lewis), and indicated that such an assignment would cure their other objections, which they would withdraw.[37] They also indicate that they "would not oppose the imposition of reasonable conditions, such as a duty to cooperate to ensure access to each lot from the roadway or shared cost of removal of the existing poultry house."[38] Respondents support the Return, acknowledging Respondents' preference that Lewis get Lot 1 and Lawrence get Lot 2, as the Return suggested, but indicating that they would be "agreeable to the Court assigning the properties as it saw fit."[39]

---

[35] *Id.* 255:9-17 (Lewis' testimony that Lot 4 is "pretty choice … the view, location, looking down over the river, looking back across the farm …"); *id.* 256:17. Lewis indicated that he would not reject Lot 4, and that he and Lawrence would be okay with Lots 3 and 4 "as long as we get our fair share in ground. We want some ground." *Id.* 255:24-256:5. He testified that he and Lawrence had talked about farming their lots, and that he had no intentions of moving into the farmhouse. *Id.* 250:7-20; *id.* 256:7-9.

[36] D.I. 50; D.I. 51.

[37] D.I. 51, at 3, 14-15.

[38] *Id.*, at 3-4. Petitioners disagree with the demolition of the farmhouse. *Id.*, at 4. They argue, alternatively, that the Court should reject the Return and unjust and appoint new commissioners to start the process over. *Id.*, at 4, 15-16.

[39] D.I. 50, at 4. Respondents assert that, "[i]f all four parcels are, in fact, of equal value as certified by the Commissioners, the allocation to individuals would be of no moment." *Id.*

They also argue that the demolition costs necessary to achieve subdivision approval should either fall on the assignee of each lot or be allocated evenly among the parties.[40]

## II.    ANALYSIS

I consider whether the Return should be approved and how the lots, as partitioned, should be assigned to the co-owners.  "The Delaware partition statute recognizes the common law equitable right to sever concurrent ownership interests in the same real property."[41]  "Because of the unique nature and quality of land, the Delaware partition statute contemplates 'as the first and preferred option not the partition sale of land but partition in kind.'"[42]  Under Delaware's partition scheme, this Court is afforded general equity powers and authority "to make any order or decree not inconsistent with the provisions of this chapter relating to causes in partition, or matters incidental or pertaining thereto, which the right or justice of the cause may demand."[43]  In a partition in kind, co-owners "have no legal right to

---

[40] *Id.*, at 4-5.  Respondents mention the existing crop lease on the Property, which is in place through 2023, and the Property's enrollment in the Delaware agricultural land preservation program until May 2024 (at least). *Id.*, at 2; Pet'rs' Tr. Ex. 3; Trial Tr. 73:13-17; *id.* 79:3-7.

[41] *Est. of CTC E., LLC v. Goldstein*, 2022 WL 4592055, at *6 (Del. Ch. Sept. 30, 2022) (citations omitted).

[42] *Chase v. Chase,* 2021 WL 3930443 at *5 (Del. Ch. Aug. 30, 2021) (citing *In re Real Estate of Roth* ("*Roth*")*,* 1987 WL 9370, at *1 (Del. Ch. Mar. 16, 1987)).

[43] 25 Del. C. §751.

any particular part or parcel of the land they own as co-tenants."[44]  This Court applies "equitable principles of fairness in approving an assignment of a particular parcel on in-kind partition of land."[45]

Petitioners state that their objections to the Return would be cured and withdrawn if Rene is assigned Lot 1 and Jay is assigned Lot 2.[46]  Rene seeks Lot 1 so that she can build right away and for personal reasons,[47] and Jay seeks Lot 2 to use the farmhouse.[48]  Respondents have not objected to the Return, and assert that it represents a just and fair partition.[49]  Lewis has expressed an interest in Lot 1 because it adjoins his existing property,[50] and both Lewis and Lawrence expressed the desire to have adjoining lots.[51]  I do not rely on the Returns' suggested lot assignments, considering that the Commissioners spoke only with Respondents

---

[44] *Roth,* 1987 WL 9370, at *1.

[45] *Id.*; *see Lynch v. Thompson*, 2009 WL 707637, at *1-2 (Del. Ch. Mar. 5, 2009), *judgment entered,* 2009 WL 1900464 (Del. Ch. June 29, 2009), *aff'd,* 990 A.2d 432 (Del. 2010) (using the Court's equitable powers to assign a specific parcel of land in a partition in kind for one co-tenant, and imposing conditions on that co-tenant).

[46] D.I. 51, at 14-15.

[47] *See supra* note 31.  I take into consideration Rene's sentimental attachment to Lot 1. *See Chase*, 2021 WL 3930443 at *5.

[48] *See supra* note 30.

[49] *See* D.I. 50.

[50] *See supra* note 35 and accompanying text.

[51] *See supra* note 34.

(not Petitioners) prior to making their suggestions,[52] and the Return stated the suggestions were being provided "as a convenience to the court" and that "any of the owners could take any of the parcels."[53]

Further, Lawrence described Lot 4 as the most desirable lot and Lewis called it "pretty choice" because of its view, location, and the ability to hunt and fish.[54] Lawrence and Lewis discussed farming their lands together and all of the Property, including Lots 3 and 4, can be farmed.[55] And, unlike Petitioners, Respondents did not reject the possibility of being assigned Lots 3 or 4, and agreed to the Court assigning the properties "as it saw fit."[56] Therefore, I find it is equitable and fair to assign the lots described in the Return as follows:

    a.    Lot 1 is assigned to Petitioner Rene G. Johnson.

    b.    Lot 2 is assigned to Petitioner Jay Kevin Green.

    c.    Lot 3 is assigned to Respondent Lawrence Lee Green.[57]

---

[52] *See supra* notes 20, 21 and accompanying text.

[53] D.I. 25 at 3; *see supra* note 19.

[54] Trial Tr. 255:11-17. Although Lewis expressed his desire to have Lot 1 or 2, he does not personally farm his land so it would not be detrimental for him to have his parcel separated from the land he currently lives on. *Id.* 256:24-257:19.

[55] *See supra* note 7 and accompanying text. *See also* Trial Tr. 154:21-24 (Commissioner Cotten's testimony that land in a flood zone can be farmed).

[56] *See* D.I. 50, at 4.

[57] Lots 3 and 4's assignments are subject to change if Lawrence and Lewis agree to a different assignment of those lots between themselves, prior to the entry of the implementing order in this matter.

d.     Lot 4 is assigned to Respondent Lewis Curt Green, Sr.[58]

With those assignments, there are no remaining objections to the Return.  The parties shall work together to subdivide the Property into the four lots as described in the Return.

Each co-owner shall share equally in the costs of demolishing the poultry house on the Property, and any other structure on the lots that the assigned owner designates for demolition within (thirty) 30 days of this report becoming final, and for removing the remains of the hog house and the cleanup of Lot 4.  They shall contribute their *pro rata* share of those costs and provide reasonable cooperation to ensure access to each lot from the roadway.

### III.     CONCLUSION

For the reasons stated above, I find that the Property should be partitioned in kind, subdivided consistent with the Commissioners' Return, and assigned to the co-owners as specified in this report.  I recommend that the Commissioners' Return's subdivision of the Property be approved.  I further recommend that the Court order each co-owner to share equally in subdivision, demolition and other costs as specified in this report, and cooperate to ensure road access for each lot. This is a final report and exceptions may be taken under Court of Chancery Rule 144.  Within thirty (30) days after this report becomes final, the parties shall

---

[58] *See supra* note 57.

submit an implementing order to the Court, and advise the Court as to any outstanding issues that need to be addressed.

Sincerely,

*/s/ Patricia W. Griffin*

Master in Chancery